Good morning, Your Honors. If it may please the court, Attorney Ioffe for the petitioners. This is a fairly straightforward case, Your Honor, as far as immigration matters go. There's no issues as to credibility. The petitioner was found credible by both the judge and the board, and there's no issue as to past persecution. We're not claiming any past harm. And in fact, the only issue is well-founded fear, and whether or not the petitioner has established objective fear. They've already found subjectively that her fear is reasonable. So there's two claims, Your Honor, and I would start with the much stronger claim, which is the religious claim. And basically, it comes down to this. The court found that the church that the petitioner belongs to is similar but not the same as the Shouter's Church, which is clearly banned in China. It's still banned. It's on page 170 of the record in the Religious Freedom Report. And, Your Honors, as I argue in my brief, this finding is clearly erroneous. And the judge demonstrated a shocking ignorance and not understanding of this sect. So I want to explain when they refer to it as the local church, they do not mean a church in your neighborhood that's located locally. This is actually a name of the sect. They call themselves the local church because they believe that there's one church per city. And that's why it's the local church. It's located in that city. They do not call themselves the Shouter's. The Shouter's is what the Chinese government calls them because when they pray, they pray Jesus very loudly. And the judge says, well, I believe you belong to the local church, but it's not the same as the Shouter's. That does not credit her credible testimony. If they found her credible and she insists my local church is the same as the Shouter Church in China, I think that satisfies the 10% likelihood if they found her credible. But there's more, Your Honor. We submitted tremendous evidence explaining the local church that the judge and the BIA either ignored or did not pay careful attention to. As I argue in my brief, there's a whole history of the living ministry that explains. And the judge, again, misunderstood. She said, well, you say Witness Lee started your church, but it says Watchman Lee. In fact, it's both. Watchman Lee started the church in China. Witness Lee spread the church to the United States, Taiwan, everywhere in the world, Your Honor. The judge did not even understand this distinction. And then this same – so the local church – Did the judge ask about that distinction? Was that probed? I believe so, Your Honor. I mean, I definitely – I was the attorney handling the case, so I go through all that on direct examination, and we also have a witness. Can you show me where that was explained? On page 255, Your Honor, there's a whole congressional breakdown of the living church ministry and how it started with Watchman Lee, how it went on with Witness Lee, and how the church eventually became banned. Okay, so when you said 255, sorry, I'm using – Of the record. Right, so I'm using the ER side. It's 255 of the administrative records, sir? Yes. Okay, so I think you're going to go – let me just make sure that I'm saying this correctly. Right, so 255 is the congressional record. Yes. Okay, so what I'm asking was a little different. Did the immigration judge ask questions about this discrepancy? No, I don't think so, Your Honor. But this was in the record. This was in the record, and there is another crucial piece of evidence on the record on page 286, Your Honor. Okay, hang on. 286. Okay, I'm there. And that's a list of political prisoners in China. And why this is crucial, Your Honor, is if you look on the next page, for example, 287, I underlined the part that says – so it lists all these various prisoners in jail. And it's underlined, shouters, and in parentheses, local church, Your Honor. Right. And this document that I'm looking at is from – you've taken me to – where am I? Congressional Executive Commission. Correct, Your Honor. Thank you. So even the U.S. government acknowledges that the local church and the shouter church is the same. There is no distinction. But this was not probed. The immigration judge didn't ask about these distinctions. No, she just – this came up for the first time in her decision that she appeared not to understand. The judge seemed very confused at the hearing, though. She kept saying, you mean the local church, you mean the hacienda. Exactly, Your Honor. That's why I tried to explain that it's not the local neighborhood church. The hacienda church is called that way because it's a particular sect. Right. So did you argue this before the BIA? Absolutely I did, Your Honor, 100%. And they cited matter of Burbano, and they basically did not address any of my arguments. They've just adopted the judge's finding. So what's the relief that you request today, sir? Your Honor, because the petitioner was found credible, we would like the court to grant the petition and find that she's established a 10% chance of future fear, and then she would be entitled to asylum. Because that's the only argument at issue. There is no past harm at issue, and she's already been found credible. So if the court finds there's a 10% likelihood. Withdrawal? I'm sorry, Your Honor? Which form of relief? Asylum. You're asking for asylum? Asylum is higher than withholding a removal, Your Honor. There's no one-year bar here, so she would be entitled to asylum. Okay. Thank you. And the other, just briefly, Your Honor, she had another claim, which is family planning policy. It's not as strong because the policy has changed, and they do allow and encourage three children. My only argument to that would be the government acknowledges that sometimes the enforcement of the policy is uneven, and that occasionally, while right now most people get fined and maybe you lose your job, something like that, occasionally they do still make sterilizations. Doesn't it depend on the location within China? Yes. Certain rural areas are there. Yes, the national policy has changed, but that doesn't mean it's seeped into the local communities. A hundred percent, Your Honor. Enforcement varies, and we only have to show a 10% chance. So she has three children, Your Honor. They actually happen to be seated here. They have three children, Your Honor. That's the max allowed right now. So there is a 10% chance that they could sterilize her so she doesn't get pregnant again. All right. Why don't you save your time for Rebecca. Yes, Your Honor. Thank you. Let's hear from the government. Apologies. May it please the Court, Sharon Clay on behalf of the government. The evidence in this case does not control reversal of the immigration judge's determination that the evidence is not objectively reasonable. Petitioner's evidence as submitted is inconclusive. Petitioner testified that her church was affiliated with the Shouders Church in China, but her testimony was actually contradicted by her witness's testimony that the church was founded by a gentleman named Brother Ni Shang and follows a European church called the Brothers Church. The letters that she submitted also to substantiate her claim only established the fact that she attended the church. They did not establish whether or not their church was affiliated with the Shouders Church as well. Petitioner also claimed that the church used a recovery Bible during testimony. Excuse me. Excuse me. I missed that. You're cutting in and out. Maybe you can adjust your microphone. Oh, I'm sorry. Yeah, sorry. That's okay. Yeah, and the connection's a little fuzzy, too, because your video's cutting in and out, too. I apologize. I actually had to, I'm at my mother's house. I had to pick her up. She was just discharged from the hospital, but I'm not in the usual location. Okay. We're sorry to hear that, and we just want to hear what you have to say. Yeah, my computer's freezing, too. So, yeah, okay. So getting to the evidence that was submitted in this case, the letters that the elders had submitted in support of the claim only attested to petitioner's attendance at the church. The one letter that actually made reference to local churches still only contended that they were affiliated with the churches in the United States. While I understand that Witness Lee and Watchman Nee are the same or they're affiliated, the name raised by the witness before the court did not appear to be the same, and there was no evidence to clarify whether or not it was or was not the same, ergo all the confusion. So, Counsel, how do you square that with the credibility finding? And then also, separately, assuming there's this issue of whether there could have been corroborating evidence, and can you point to anything where the IJ clearly met the requirements for giving petitioner notice of a need for corroborating evidence? Okay. On point one on the credibility issue, under the Real ID Act, since its inception, in order for an alien's testimony to carry the day, the testimony has to be credible, persuasive, and meet the petitioner's burden of proof. It's not enough that it's just credible. And under the circumstances of this case, because her witness actually testified or gave a different name, the evidence or the contrary evidence kind of undermined the burden. Well, Counsel, the IJ, of course, has a duty to develop the record and to probe if there was an inconsistency. What I can't tell is whether there was any follow-up here at all. It sounds like the government's not contesting the point the presentation made today, that both individuals are, in fact, founders of the church. I don't know. Can you hear me? You're frozen. Yes. Can you hear me? Yes. Did you get my question? No. Could you repeat that, please? You bet. So we know that the IJ has a duty to develop the record. It sounds like the government is not contesting that representation made today, that the two individuals identified are founders of the church, right? And I can't see anywhere in the record where the IJ probed or asked about this question, whether we talk about it, frame it in terms of our REN authority, which requires an opportunity to provide corroboration, or just clarifying the meaning here. But if the government's not pushing back that these two individuals are both founders of the church, I'm straining to see how this discrepancy supports the government's position. Well, in the beginning, on one of the initial hearings in 2014, the immigration judge informed opposing counsel that they were having some problems  and said that he needed to be clear that they needed documentary evidence to support the claim. The actual hearing did not take place until four years later, so the petitioner had four years to develop the evidence in the case. Nearing the end of the hearing on the merits, opposing counsel actually brought forth information and said, I know what would corroborate my claim, but he did not submit it. He was talking about a printout that he could get from the church that would kind of settle all the information that was necessary for the immigration judge to make a final decision. But for, I guess, maybe after government's counsel objected to the submittal of the information, opposing counsel did not submit the printout. What's the basis for the objection for the corroborating evidence? The objection, the government's counsel said that he thought it was going to be prejudiced, but that was without seeing it. However, the immigration judge said that was fine. He was willing to entertain the new evidence. It was never submitted. As a matter of fact, in the record, petitioner's counsel actually said, I will get you a copy of the printout within 30 days before you render your decision. The immigration judge actually rendered the decision 60 days after the actual hearing. So the hearing closed in September. They had a reading of the decision in December, and it was primarily because he was anticipating that petitioner was going to submit some additional evidence. Because throughout the proceedings, the immigration judge kept telling him that the evidence was not meeting his burden of proof, so to speak. Right. Sometimes we see these cases, and there's no fault to it, but there's just truly confusion and miscommunication. Correct. Right? But where? So it's our job to take a look and make sure that this has been fair. And giving somebody notice that there's a problem with credibility doesn't help me a lot where I'm at sitting now because she was found credible. And I appreciate that credibility alone isn't enough, but credibility isn't her problem. She was found credible. Correct. Go ahead. No, go ahead. Go ahead. And opposing counsel just pointed to a couple of places in the record, right, where it's explained what local church means. I agree with Judge Wardlaw there was a little confusion about the local church because that sort of inherently has two meanings in this case, right, in this circumstance, because there's a church they're attending here in California, and then the ones in China that have an entirely different meaning. I don't hear the government pushing back on that. I don't hear the government pushing back on this discrepancy, which, you know, again, 20-20 hindsight is wonderful. I appreciate that. But it seems to be conceded that these founders of the church are both correct, and that's not really an inconsistency. So what do we do with all of that? Well, the thing is that those two founders of the church are not an inconsistency, but the person that the witness proposed was the founder of the church is an inconsistency, which undermines the petitioner's burden of proof. The way I understand it is that when the record is inconclusive, the person that has the burden of proof loses when there's confusion in the record. He actually had the ability to clarify some of that confusion. He suggested what he was going to do to clear it up, but then he didn't follow through, and he was never prevented from doing that. Well, he sure did at the BIA, though. So I guess the government's position is simply that. Excuse me. I didn't mean to interrupt. I thought you were done. Go ahead. No, no. Go ahead. I think he tried. With the BIA. Well, even though he challenged it, he didn't. Go ahead. It's hard. I'm sorry. Yeah, okay, wait. It's hard. Yeah, it's hard. You go first. Go ahead. I feel like I'm going in and out. Make your point, Kenzo, please. The argument that we're just simply trying to make is that the burden of proof by that his burden of proof was undermined by his failure to ask questions about the mother-in-law who she lived with for years. So two of the things that were missing out of the record was the fact that we didn't know what was going on in their region, in their particular province. But there was one person who could have given us an insight into that, and that was the mother-in-law. And during the proceedings, the petitioner kept saying, well, I didn't talk to her about her asylum claim. She's invited me to the church. She never asked her about what type of church it was. Was it a chalice church? Was it an underground church? But what the immigration judge determined was the church that the mother-in-law did attend was an unregistered church. And so the immigration judge made an assessment that petitioner was similarly situated to her mother-in-law. And the fact that the mother-in-law had never made any allegations about having been persecuted, the immigration judge found that that was significant in this particular case to determine whether or not the petitioner was meeting his burden of proof. Counsel, I have a question. If it was established that the church that petitioner attends here is a chalice church, would there be any dispute that she would be entitled to asylum? Well, it still would be in dispute in the sense that, remember, the implementation of the different religious practices vary from province to province. She would still have to meet that burden of proof. There's no 10% chance if no one is getting persecuted in her province. And the fact that we've been denied or not been getting information about her locale means that they still haven't met their burden of proof. That doesn't mean she's going to have 10% because, you know, the Henan province has a high rate of persecution in their province, but there may be no persecution at all in hers. Counsel, are you now making a relocation argument? Because that wasn't made before. That wasn't made before. I mean... No, I'm not making a relocation. I'm making that we recognize that these harms vary from province to province. And we can't just assume that she's got a 10% likelihood of harm when they presented no evidence about what's going on in her particular province. And based on the fact that the mother has attended an unregistered church in that province and has not been harmed, she admitted that she knew of no one who sought asylum and was granted it. She didn't know anybody who personally had been harmed. Other than what the persons in the church told her about people in China generally had suffered, she had offered no evidence as to the likelihood of her being targeted or having any kind of particularized threat or harm if she were to return home. So, I don't understand where this argument's coming from because the BIA noted that the Chinese government has banned the Chowders as a cult. The government has banned it. They're banned everywhere. Correct. They are banned, but if you look at the record, all the evidence, the plethora of documents they submitted, they all predate 2014. The only two documents that are post-2014 are the 2016 Religious Freedom Report and the 2017 Country Report. And if you look at those reports, they're not showing or establishing that persons who are part of Chowders groups are actually being harmed. Now, the 2016 does mention that they are a cult and that they can be subject to imprisonment, but there are no instances that you could point to where it had happened in recent history. It was timely in 2014 for them to submit 2014 evidence because that's when they submitted the application for asylum. So, just because this thing has been dragged and delayed and gone on for years before it's gotten to us doesn't mean that that data wasn't supportive of her claim. That is correct. However, Petitioner did file subsequent supplemental documents up until 2018, which never extended any of the harm past the original documentation. And did the IJ... There was an opportunity to... Did the IJ ask for that updated information? No. I don't believe the IJ asked, but I am convinced throughout the whole proceedings the immigration judge kept informing the Petitioner that they didn't see the evidence was sufficient to grant relief. What is the most specific... And Petitioner was given the opportunity even after the hearing was over. Counsel, I understand you're saying that the IJ made comments throughout the proceeding. My understanding of Wren is that at some point, the IJ had an obligation to assess the evidence that came in and if they believed additional corroboration was necessary to give clear notice to the Petitioner that additional evidence was necessary. Can you point me to what you think comes closest to satisfying that requirement of Wren? My computer's frozen, so I can't... Okay, so I think in the record at the... Administrative record at page 46, at the hearing on November 5th, 2014, Petitioner's counsel stated that they were aware of the need to get corroborative documentary evidence. The merits hearing was scheduled for December 1st, 2016. Next hearing was actually held on March 13th, 2017. Well, the actual hearing was on September 25th, 2018. There were further conversations with Petitioner's counsel to submit a printout and a judge informed him, and I can't figure out... Maybe it's 168 or so in the record, where the immigration judge said that was fine. If you want to submit a document that would help clarify my confusion, I'm going to give you this time to do it and I'll set the case for decision 60 days later. Well, no printout was ever forwarded, though they had a discussion about this printout that was supposed to be about the founding of the Hacienda Church. Okay, so... I mean, that was this complete, explicit conversation. Okay, so this person, this Petitioner's found credible, right? I know you're struggling with this communication. I appreciate you're hanging in there with us, but she's found credible. Her testimony said she and her family are a member of this church. We've talked about, and the government's... I really appreciate your candor, not disputing the difference, this distinction between local church and Shouders Church. I get that. That's conceded, right? I think opposing counsel has explained that where in the record there's evidence that the local church, Shouders Church, Prynne Locals Church, is what we're talking about. I think you've conceded that there's other evidence in the record that the folks who are members of that church in China have been imprisoned. So I'm trying to figure out now, again, 20-20 hindsight, what corroborating evidence do you think is missing from this record? Okay, so that particular statement I don't think is accurate about the people at the church that were persecuted in China. I think that was a reference to page 104 and 105 in his brief. Okay, so hang on. If you go... Forgive me, forgive me. So is it the government's position that what hasn't been shown is that a person who's a member of the Shouders Church in China would face future persecution by a 10% chance? Is that the government's argument about what the missing link is? No, the argument is that there potentially is a person who could suffer a 10% chance of persecution. What we're saying is it's not all over the whole country and that it was the petitioner's burden to establish that he has a particularized risk of persecution. And if your characterization is incorrect and belied by the State Department documents in the record, do you lose? I guess it depends on... I know it's not her fault that the record only goes up to 2014. I understand that. But you can't say that the conditions are the same as they are now. Well, you also can't now start arguing changed country conditions. I mean, these are all new arguments that are as a result of this prolonged length of time that this case is impending within the agency, right? I mean, I'm sure it's nobody's fault, but this is the way it is. This is what we've got to work with right now, the record as it is. So I would just like to just interject that the case that I had cited by the Supreme Court, Garland v. Ming Dai, which says that testimony, credible testimony alone, is not sufficient to necessarily meet your burden of proof. And if the law is going to have any real importance, then we shouldn't just ignore one part when one part is already there. I mean, essentially what we're saying is she just hasn't met the burden of proof. There has been questions throughout the whole record, regardless of date, time, or how long time survived. The immigration judge was confused. Okay. So you're well over your time, counsel. Okay. All right. Thank you very much. Thank you. Thank you very much. Your Honors, with all due respect, the argument was just rambling nonsense. And, Your Honor. Counsel, I think government's counsel made some important concessions and constructive ones. So could I just ask you to focus on the area that opposing counsel said remains in dispute? Please, Judge. Yes. Yeah. So I think it has to do with the risk of counsel. Let me just get the question out. I know the stakes are high here for your clients, but I'm trying to be helpful and help us narrow the issues. I only hear the government at this point saying that the remaining issue is the risk of future persecution. And I agree with Judge Wardlaw. The record is what it is, right? And then you appealed to the BIA, and the BIA has gone the route of matter of verbeno. Yes. So they're not giving us any additional reasons. So can you point in the record your best evidence to show that your client faces the risk of future persecution as a member of the Shouters Church? Your Honor, right there on page 169, as Judge Wardlaw alluded to in the country report, it still says, Your Honor, that local church is labeled as a cult. Even counsel conceded that on page 170, Your Honor. Yes. And then I was going to mention, Your Honor, it is incorrect that we did not submit proof of Shouters being harmed in China, Your Honor. On page 186, there is an entire index that mentions a whole number of articles where various Shouters were harmed in China, Your Honor. Right. I've got 186. I've got that. Is there anything else you want to point out for the record? Can I mention a few other quick things, Your Honor? Of course. This issue of relocation has never been raised before, and it is not reasonable because, as mentioned before, Shouters is banned in all of China. Well, opposing counsel just clarified that in response to Judge Wardlaw's question, she's not making a relocation argument. Well, it seemed like they were making a relocation argument, Your Honor. It seemed to me, too, but I clarified that. She says no, they're not making a relocation argument. But then what argument do they have left, Your Honor? Because she belongs to the local church, it's banned in the country report. The way I understand the IJ's decision is that the IJ, as a preliminary matter, did not seem to find that the local church was actually a Shouters church and that the record only showed that it was a Christian church. And then from that factual premise, the IJ says there isn't sufficient proof that Christians generally are persecuted in China. And there doesn't seem, as far as I can tell in reading the IJ's decision, a specific finding that members of the Shouters church are not prosecuted or don't face a 10% risk of persecution in China. So then that leaves me, if we go back to the issue of whether your client was actually a member of the Shouters church, then that seems to, then the rest of the discussion about persecution of Christians generally becomes, as far as I can tell, irrelevant. I 100% agree, Your Honor, and that goes to the very beginning when I mentioned that it goes to that incorrect distinction that the judge made when she found that it's similar but not the same. It is the same. It started out as an underground church in China. It's spread in America where they are able to practice in this offshoot. And she credibly testified moreover. Sorry. Just because we're out of time, I do want you to address specifically the contention that the other witness essentially contradicted the petitioner and said that the church is not affiliated with the Shouters church. And then given that either you agree or disagree with that characterization, but then assuming there is an inconsistency or contradiction in the witness testimony, is there additional corroborating evidence that would have bolstered the record on this issue? Your Honor, I think the judge found this discrepancy based on the witness's letter,  She said her letter mentions being affiliated with Witness Lee and your documentary evidence talks about Watchman Nee. And again, those two go side by side together. So that was going to be my other argument. Under Wren, Your Honor, the judge made these general requests, but she never gave us a specific request. And we cannot read our mind, Your Honor. So if the court does find this rests on corroboration, we at least need a chance. What evidence does the judge want us to show that this local church is actually a Shouter church? And can we show that? This is what they believe, these people. They think genuinely that our church is the same church that started in China by Watchman Nee. We are continuing this tradition in America. So if I understand you correctly, you're saying that I.J.'s understanding of the letter is actually incorrect and the letter doesn't actually contradict the testimony because the letter is actually consistent with a finding that it was a local church and affiliated with the Shouters. But even if there is some question or inconsistency, your contention is that there should have been a specific request for a cooperating evidence. Under Batra, Your Honor, and under Wren. And last point, the mother-in-law. Not the mother. Mother-in-law is a regular Christian, not a local church member, so she's not similarly situated was my argument in the brief. Let me ask you, has there been ever, I mean, given the Biden administration's new rules about priorities, has there ever been any talks with the government in this case, like talks about mediation? No, Your Honor. There hasn't? No. Would you consider participating in a mediation? We have such a strong case, Your Honor, we believe we'd like to proceed and, I mean, if they were to offer us remand. I think probably, speaking only for myself, at a minimum there's a remand possibility under Wren and there's also a possibility of an outright grant. I don't see a possibility of total denial, just speaking for myself in this case. So I agree that there's a strong case here. Judge, I would. Just throwing that out. I would note that if the court, and it's outside of the court's review, but the situation remains dire for the local church members. And if you look at the 2022 country report, it is still banned. It is one of the first things they mentioned. Judicial notice of the 2022? I would like the court to take judicial notice of the 2022 religious freedom report. Can you submit that to us? I could, absolutely. Okay. You can actually, yes, you could just electronically file it with a cover letter. Yes, Your Honor, I will do that. And the church is banned in all of China. It doesn't matter which province, Your Honor. Well, it sounds like it's banned by the national government. Yes. It is banned by the national government. Like Guangdong, Your Honor. It's treated similarly. Right, it's the entire country. All right. No, it's nothing. Thank you very much, both counsel, for your argument. I'm sorry that you had to make this video appearance. Oh, I actually very much enjoyed it, Your Honor. It's been seven years since I've been here in person, and I've done it on video before, so I was very much looking forward to seeing everyone. We're encouraging people to participate in person now. So thank you for doing it, and thank you for making your remark. Thank you so much. And thanks to government counsel for hanging in there with your connection. Yeah, yeah. So Pan v. Garland will be submitted.
judges: WARDLAW, CHRISTEN, SUNG